(89 Misc. Rep. 149)

### FITZGERALD v. MILLER et al.

#### (Erie County Court. February, 1915.)

MORTGAGES ⟨key⟩151—MECHANICS' LIENS—PRIORITY—VENDOR AND PURCHASER.
    Where all the provisions of a contract for the sale of lots were apparently inserted for the sole benefit of the purchaser, who was not restricted as to the amount of a building mortgage which he might place on the property, and which would take priority over the vendor's mortgage for the unpaid purchase price, and where the vendor was to furnish none of the money for the erection of the buildings, and to have no say as to their character or manner of construction, or whether they should be constructed, a mechanic's lien for work and material used in the erection of the buildings was inferior to the vendor's mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 307, 309–311, 314–329, 332–336; Dec. Dig. ⟨key⟩151.]

Action by William H. Fitzgerald against Walter J. Miller and others to foreclose a mortgage. Judgment for plaintiff.

Albert L. Stratemeier, of Hamburg, for plaintiff.
Daniel N. McNaughton, of Buffalo, for defendant Koch.

LAING, J. This is an action to foreclose a mortgage given by the defendant Walter J. Miller to the plaintiff. On the 4th day of April, 1913, the plaintiff, who was then the owner of the premises described in the complaint, entered into a written agreement with the defendant Miller, the material parts of which were:

"Mr. Miller contracts to purchase from you, through us, the five (5) lots for the sum of twenty (20) dollars per foot, or three thousand (3,000) dollars for the entire five (5) lots. The terms of the sale are that Mr. Fitzgerald will deed to Mr. Miller the lots one at a time within six (6) days from the time their work is started on each lot. The terms of the sale are that Mr. Fitzgerald will deed the lot on which Mr. Miller commences work, taking a first mortgage of seven hundred (700) dollars on the North Ogden street lot, six hundred fifty (650) dollars on each of the Schiller street lots, and five hundred (500) dollars on each of the Goethe street lots.

"As soon as Mr. Miller is able to secure his building mortgage, he will pay the sum of one hundred (100) dollars in cash per lot, and leave a second mortgage for six hundred (600) dollars on North Ogden street lot, five hundred fifty (550) dollars on each of the Schiller street lots, and four hundred (400) dollars on each of the Goethe street lots. These mortgages to be payable on or before one year, with interest at the rate of six (6) per cent. Mr. Miller agrees to commence work on house No. 1 within thirty (30) days from this date, and the other four (4) within sixty (60) days. Taxes and assessments to be computed, and paid by the vendor, up to the date of sale.

"Mr. Fitzgerald agrees to give an abstract of title for each lot, as and when deed of lot is made. Conveyance to be made at time of placing building loan, and second mortgage to be given at same time. Building loan to be obtained from some chartered bank, and, if from private individual, then to be subject to Fitzgerald's approval."

The defendant Miller, on or about April 18, 1913, made an agreement with defendant Koch for the erection of buildings upon said premises, and under that contract Koch did work and furnished materials, and subsequently filed a mechanic's lien, and he now claims that this lien, amounting to $275, is prior to the lien of the plaintiff's mortgage. On or about June 6, 1913, pursuant to the contract of April 4, 1913, the plaintiff gave to Miller a warranty deed of one lot, and Miller gave back the mortgage in suit. The validity of the lien of defendant Koch depends upon the contract between the plaintiff and Miller, dated April 4, 1913.

It is urged on behalf of defendant Koch that this contract shows the consent of the plaintiff necessary to the enforcement of a lien against the owner of the property. I have examined numerous cases bearing on this proposition, and have reached the conclusion that the contention of the defendant Koch cannot be upheld. The contract fails to show that the plaintiff had any interest in the building to be done by the defendant Miller. He did not look to the buildings to be erected for his security, because the mortgages he agreed finally to take were to be second mortgages, and second, apparently, to the whole cost of the buildings. He was to furnish none of the money for the erection of the buildings, and was to have no say as to the character of the buildings or the manner of their construction. He could not, under the contract, enforce or prevent the construction of any of the buildings. The provision of the contract that work was to be commenced by Miller within a certain time was evidently a provision inserted to fix the time of the payment of the purchase price

of the property. The provision in the contract that, in case the building loan was from an individual, it should be subject to plaintiff's approval, was evidently inserted for the purpose of enabling the plaintiff to prevent placing the loan with somebody who would not be able to carry out his contract, and so delay the payment to the plaintiff of the purchase price of the property.

The use of the word "their" found in the third paragraph of the contract should not be construed as meaning that the building operations were the operations of Fitzgerald and Miller. The word is apparently either a clerical error or an expression of a writer who did not have a very good understanding of English. There is nothing in the contract to show that the buildings to be erected by Miller were to be for the ultimate benefit of the plaintiff. I find no decisions that are authority for sustaining a lien against the owner upon a contract of this character. This contract, considered with reference to the question here involved, does not differ from the ordinary contract for the sale of real estate. The provisions in the contract with reference to the buildings to be erected on the property were apparently all inserted for the benefit of Miller, and not for the benefit of Fitzgerald. Fitzgerald seeks by this contract to get the purchase price for the land, and to get that within a certain time, and he gives Miller a free hand in placing the building mortgage, as to the amount of the mortgage, and after such building mortgage is placed agrees to take a second mortgage for the balance due on the contract.

It may not be necessary in every case, in order to sustain a lien, that the buildings should be for the benefit of the owner, and it may not be necessary in every case that the owner should have authority to enforce the erection of buildings or authority to stop their erection. It may not be necessary in every case that the owner should know just what kind of buildings are to be erected or their cost. It is true, however, that in the various decisions that have been made bearing on this proposition much stress has been laid on all these elements. Here is a case where all these elements are lacking, and I am satisfied that with all these elements lacking it cannot be held that the work was done and materials furnished with consent of the owner.

I hold, therefore, that the plaintiff is entitled to the judgment of foreclosure and sale, and that the lien of the defendant Koch is inferior to the lien of the plaintiff's mortgage.

Judgment of foreclosure and sale for plaintiff.